**VIRGINIA:**

IN THE CIRCUIT COURT FOR THE CITY OF ALEXANDRIA

| | |
|---|---|
| MOHAMMAD YASHAR S. KALANI<br>3131 Michaelson Drive #1105<br>Irving, CA 92612<br><br>Plaintiff,<br><br>v.<br><br>MARY E. JENSEN<br>Martha Jefferson Hospital<br>500 Martha Jefferson Dr.<br>Charlottesville, VA 22911<br><br>and<br><br>JOHN GAUGHEN<br>Martha Jefferson Hospital<br>500 Martha Jefferson Dr.<br>Charlottesville, VA 22911<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  CASE NO. CL19003215<br>)  JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW the Plaintiff, Mohammad Yashar S. Kalani (hereinafter referred to as "Plaintiff" or "Dr. Kalani"), by counsel, and moves for judgment against Defendants Mary E. Jensen and John Gaughen (hereinafter referred to as "Defendant"), on the grounds and in the amounts hereinafter set forth:

    1.    Plaintiff Dr. Kalani is a neurosurgeon who has been practicing medicine for 11 years.

    2.    Dr. Kalani earned his medical degree from Stanford University School of Medicine, and a Ph.D in Chemistry from the California Institute of Technology. He completed his neurosurgery residency at the Barrow Neurological Institute, where he also



completed fellowship training in complex spine, cerebrovascular and skull base surgery and endovascular neurosurgery. Dr. Kalani also served on the neurosurgery faculty at the University of Utah.

3. During the time period most relevant to the wrongful acts alleged in this complaint, Dr. Kalani was part of the neurosurgery faculty and an Associate Professor at the University of Virginia.

4. Dr. Kalani presently resides in California.

5. The Defendants, Dr. Mary E. Jensen and Dr. John Gaughen, are physicians and residents of Virginia, and they regularly conduct business in Virginia. Their tortious acts were committed in Virginia and caused Dr. Kalani injury in the Commonwealth and in California.

6. Dr. Kalani joined the neurosurgery medical faculty at UVA in September 2017. From the time he joined UVA, Dr. Jensen, a radiologist with UVA at that time, made it clear that she felt threatened by Dr. Kalani's presence and was going to use her best efforts to oust him by whatever means. Indeed, a mere three days after he arrived, but before he began work on 1 September, Dr. Kalani received a phone call from a physician at the Barrow Neurological Institute, where he trained. This physician told Dr. Kalani that Dr. Jensen, had called him to find out "what kind of person" Dr. Kalani was, and expressed her view that he was "hired to end" Dr. Jensen's career. This was just the beginning of the turf war that Dr. Jensen and later, Dr. Gaughen, were to start against Dr. Kalani and the neurosurgery department. Indeed, Dr. Kalani is the fifth neurosurgeon in the past eight years to have held his position at UVA.

7. Further, Dr. Kalani heard from staff on the interventional radiology team that they had been instructed by Dr. Jensen to video record Dr. Kalani and one of his partners, Dr. Min Park, during their procedures so that Dr. Jensen could use the videos as evidence against them.

8. On October 20, 2018, Dr. Kalani performed a procedure referred by a UVA otolaryngologist, to embolize arteries supplying a large tumor of the tongue of one of his patients. Dr. Kalani successfully performed the procedure, during which he noted a significant atherosclerotic burden (hardening) in the bilateral femoral arteries and the aorta. He believed that continuing with the procedure posed too much risk to the patient, so he aborted the procedure and later explained the reasons to abort the procedure to the patient.

9. On October 24, 2018, Dr. Kalani received a call from his partner, Dr. Park, who had also joined the faculty at UVA at the same time as Dr. Kalani. Dr. Jensen had just told Dr. Park that she had looked into the chart of the patient from October 20, and had come to the conclusion that Dr. Kalani had dissected the aorta. She further stated that Dr. Kalani either he had dissected the aorta and then, to cover his actions, aborted the procedure and knowingly sent the patient home to die, or else had negligently failed to recognize that he had dissected the aorta. Under either scenario, she posited, Dr. Kalani was unfit to practice. She stated that she was going to report Dr. Kalani to the administration to have his credentials revoked. (These facts collectively referred to herein as the "Dissection Accusations.")

10. Alarmed at this report, Dr. Kalani asked Dr. Park to have the patient come in immediately for a CT angiogram of the aorta. The CT revealed precisely what Dr. Kalani had observed, and further, no dissection or surgically-related damage to the aorta.

11. Dr. Jensen's accessing of the patient's records was against UVA and hospital policy and a violation of HIPPA. Dr. Kalani reported the HIPPA violation to Dr. Shaffrey, head of the neurosurgery department, the dean of the medical school, the Chief Medical Officer, and the hospital, and this report led to an investigation of Dr. Jensen's actions, although ultimately, no action taken against Dr. Jensen as a result of her conduct. This was not, however, Dr. Jensen's first or only HIPPA violation in connection with her pursuit to oust Dr. Kalani.

12. Dr. Kalani also filed a complaint regarding Dr. Jensen to the medical board. Dr. Kalani later discovered that, just two weeks later, in November 2018, one of Dr. Jensen's former fellows and now current partner, Dr. John Gaughen, had filed a complaint to the Virginia Board of Medicine (the "BOM Complaint"), against Dr. Kalani.

13. The BOM Complaint alleged malpractice by Dr. Kalani in connection with a 79-year old patient who had been receiving treatment at UVA, and who had transferred to Sentara Martha Jefferson Hospital, and who ultimately passed away. Notably, the patient had died eight months prior, but Dr. Gaughen chose to file his report with timing coincidental to Dr. Kalani's complaint in response to Dr. Jensen's actions. The BOM Complaint contained numerous false allegations regarding Dr. Kalani's treatment, and specifically alleges that:

    a.    Dr. Kalani failed to find an occlusion in the distal posterior cerebral artery. In fact, however, Dr. Kalani documented this very finding in his post-operative angiography notes.

    b.    Dr. Kalani failed to obtain post-operative imaging. In fact, however, Dr. Kalani did precisely that, ordering a non-contrast CT of the head post-operatively, and then an outpatient MRI was scheduled during follow up.

    c.    Dr. Kalani failed to note focal deficits of the patient post-operatively. In fact, the patient awoke without such deficits, as noted by members of the neurology, physical therapy, and occupational therapy teams.

    d.    Dr. Kalani failed to address family concerns, which in fact he did.

    14.    More broadly, Dr. Gaughen falsely and maliciously alleged that Dr. Kalani and the neurosurgery department at UVA were involved in a scheme to hide complications from patient procedures and intimidate radiology.

    15.    In his report, Dr. Gaughen admits that he did not contact or speak with Dr. Kalani prior to writing the report. Dr. Gaughen named Dr. Jensen as an individual with knowledge of the facts of the BOM Complaint. Yet, Dr. Jensen was never involved in the care of this patient, nor did she have a quality role, therefore, her involvement in this case without prior permission is yet another example of violation of HIPPA.

    16.    Dr. Gaughen was Dr. Jensen's former fellow. At the time he wrote the BOM Complaint, he worked at Sentara Martha Jefferson Hospital. He wrote the BOM Complaint at her suggestion, instigation and behest, and in cooperation with her and UVA, to injure Dr. Kalani. Dr. Jensen asked Dr. Gaughen to write the BOM Complaint because she knew it would appear simply retaliatory if she wrote it, in light of the

complaint Dr. Kalani had filed against her. Dr. Gaughen was well-suited to write the complaint because he was no longer with UVA and, at the time, had plans to leave the area. When Dr. Jensen was later put on leave by UVA, Dr. Gaughen had her hired at Sentara. Dr. Gaughen was clearly another member of Dr. Jensen's team in her turf war against Dr. Kalani and the neurosurgery department.

17. Dr. Kalani responded fully to the BOM Complaint and is still awaiting a decision on its disposition. He has provided multiple independent outside reviews that demonstrate that no violation of standard of care had occurred. In the meantime, he had already had one job offer/opportunity revoked as a result of the pendency of that complaint, and he continues to suffer harm in the form of lost job opportunities as a result of the false and maliciously-filed complaint.

### COUNT I (Defamation)

18. Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

19. Defendant Mary Jensen's Dissection Accusations are false and disparaging. They were false when she made them to Dr. Park, and possibly others. Defendant Mary Jensen knew they were false and/or had reckless disregard for their falsity, and acted maliciously and with the purpose of harming Dr. Kalani and injuring his reputation in the medical community.

20. Defendant John Gaughen's BOM Complaint contains false and disparaging statements regarding Dr. Kalani. The statements were false when he made them to the Board of Medicine, and Defendant John Gaughen knew they were false when he made them, and/or had reckless disregard for their falsity. He acted maliciously and

with the purpose of harming Dr. Kalani and injuring his reputation in the medical community.

21. As a result of Defendant Mary Jensen's and John Gaughen's statements as described, Dr. Kalani has suffered damages.

## COUNT II (Defamation Per Se)

22. Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

23. Defendant Mary Jensen's Dissection Accusations are false and disparaging. They were false when she made them to Dr. Park, and possibly others. Defendant Mary Jensen knew they were false and/or had reckless disregard for their falsity, and acted maliciously and with the purpose of harming Dr. Kalani and injuring his reputation in the medical community.

24. Defendant John Gaughen's BOM Complaint contains false and disparaging statements regarding Dr. Kalani. The statements were false when he made them to the Board of Medicine, and Defendant John Gaughen knew they were false when he made them, and/or had reckless disregard for their falsity. He acted maliciously and with the purpose of harming Dr. Kalani and injuring his reputation in the medical community.

25. The Defendants' defamatory statements are so obviously and inherently damaging to Dr. Kalani's professional reputation that they constitute defamation per se.

WHEREFORE, Plaintiff Yashar Kalani asks the Court for a trial in this matter, and for entry of judgment in his favor, and against the Defendants, jointly and severally,

for compensatory damages in the amount of no less than $1,000,000; punitive damages in the amount of $350,000; post-judgment interest, and all costs and fees that may be recoverable under the law.

Plaintiff demands a trial by jury.

October 22, 2019                    Respectfully Submitted,

_____
Bernard J. DiMuro, (VSB #18784)
Stacey Rose Harris, (VSB #65887)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
(703) 684-4333
(703) 548-3181 (Facsimile)
bdimuro@dimuro.com
sharris@dimuro.com
*Counsel for Plaintiff MOHAMMAD YASHAR S. KALANI*

*no service $349 # 2358*

| COVER SHEET FOR FILING CIVIL ACTIONS | Case No. CL19003215 |
|---|---|
| COMMONWEALTH OF VIRGINIA | (CLERK'S OFFICE USE ONLY) |

......................................... ALEXANDRIA ......................................... Circuit Court

| Mohammad Yashar S. Kalani, MD | v./In re: | Mary E. Jensen, MD |
|---|---|---|
| PLAINTIFF(S) | | DEFENDANT(S) |
| | | John Gaughen, MD |

I, the undersigned [ ] plaintiff [ ] defendant [X] attorney for [X] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

**GENERAL CIVIL**
**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Counterclaim
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court

**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment

**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
    [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights

**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[X] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[ ] Other General Tort Liability

**ADMINISTRATIVE LAW**
[ ] Appeal/Judicial Review of Decision of (select one)
    [ ] ABC Board
    [ ] Board of Zoning
    [ ] Compensation Board
    [ ] DMV License Suspension
    [ ] Employee Grievance Decision
    [ ] Employment Commission
    [ ] Local Government
    [ ] Marine Resources Commission
    [ ] School Board
    [ ] Voter Registration
    [ ] Other Administrative Appeal

**DOMESTIC/FAMILY**
[ ] Adoption
    [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
    [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
    [ ] Complaint – Contested*
    [ ] Complaint – Uncontested*
    [ ] Counterclaim/Responsive Pleading
    [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
    [ ] Separate Maintenance Counterclaim

**WRITS**
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

**PROBATE/WILLS AND TRUSTS**
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
    [ ] Guardian/Conservator
    [ ] Standby Guardian/Conservator
    [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
    [ ] Impress/Declare/Create
    [ ] Reformation
[ ] Will (select one)
    [ ] Construe
    [ ] Contested

**MISCELLANEOUS**
[ ] Amend Death Certificate
[ ] Appointment (select one)
    [ ] Church Trustee
    [ ] Conservator of Peace
    [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
    [ ] Reinstatement pursuant to § 46.2-427
    [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
    [ ] Correct Erroneous State/Local
    [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

*FILED 2019 OCT 22 PM 4:41 EDWARD SEMONIAN CLERK OF COURT CITY OF ALEXANDRIA*

[X] Damages in the amount of $ 1,350,000.00 ............................................. are claimed.

10/22/2019
DATE

[ ] PLAINTIFF [ ] DEFENDANT [X] ATTORNEY FOR [X] PLAINTIFF [ ] DEFENDANT

Stacey Rose Harris
PRINT NAME

DiMuroGinsberg, PC
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

1101 King Street, #610, Alexandria, VA 22314 703-684-4333

sharris@dimuro.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

FORM CC-1416 (MASTER) PAGE ONE 07/16

# Circuit Court of Alexandria
## Virginia



**Judges**
Lisa Bondareff Kemler
Nolan B. Dawkins
James C. Clark

**Courthouse**
520 King Street
Alexandria, Virginia

(703) 746-4123

December 16, 2019

Bernard J DiMuro
DiMuro Ginsberg
1101 King Street #610
Alexandria, VA  22314

Mary E Jensen
Martha Jefferson Hospital
500 Marha Jefferson Dr
Charlottesville, VA  22911

John Gaughen
Martha Jefferson Hospital
500 Martha Jefferson Dr
Charlottesville, VA  22911

RE: Kalani, Mohammad
    vs
    Jensen, Mary et al

Docket: CL19003215

### NOTICE

A Status Conference has been scheduled for the above-captioned case on January 13, 2020 at 9:00 AM in Courtroom No. 2 on the fourth floor of the  Courthouse at 520 King Street for the purpose of setting a trial date and entering a pretrial order.

You may call (703) 746-4123 to set a trial date and not appear.  However, this must be done more than 48 hours before the hearing date and the completed agreed pretrial order must be returned to the Court before the date of the Status Conference. Failure to appear will result in a dismissal of the case.  If the parties do not present an agreed pretrial order at the Status Conference, the Court will enter the Uniform Pretrial Scheduling Order in accordance with Rule 1:18 of the Rules of the Supreme  Court of Virginia.  Objections to the entry of the Uniform Pretrial Scheduling Order will be heard at the Status Conference.

The Uniform Pretrial Scheduling Order is available on the Circuit Court's website under Topics: Form for Uniform Pretrial Scheduling Order (http://www.alexandriava.gov/circuitcourt/default.aspx).